IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **MAURICE A. WILLIAMS,** *et al*, | * | |
| **Plaintiffs,** | * | |
| v. | | Case No.: GJH-17-1125 |
| | * | |
| **UNITED STATES OF AMERICA,** *et al*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **JULIA R. PEARCE** | * | |
| **Plaintiff,** | * | |
| v. | | Case No.: GJH-17-1816 |
| | * | |
| **UNITED STATES OF AMERICA,** *et al*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs[1] have sued Defendant United States of America[2] alleging that the United States was negligent in failing to maintain the painted white lane line (or "fog line") on the right-hand side of a stretch of the Baltimore-Washington ("BW") Parkway, and that the negligence caused an accident that occurred on February 1, 2015, in which Rick G. Warrick was killed and his fiancée, Julia R. Pearce, was injured. On October 16, 2017, the Government filed the now-

---

[1] The Plaintiffs here have been consolidated from two related civil cases. In Civil No. 17-1125, the family of decedent Rick Warrick filed suit against the United States. Specifically, Plaintiffs Maurice Williams, Sandra Pearson, Shauniece Williams, Tyree Williams and Keon Hensely are the children of Rick Warrick, Frederick Warrick is his father, and Charmaine Ferrel-Anthony is his mother. ECF No. 1 ¶ 7. Rick Warrick's fiancée, Julia Pearce, filed a separate lawsuit, *Pearce v. United States*, Civil No. 17-1816, that was consolidated with this one. ECF No. 11 at 2. Unless otherwise noted, the Court refers to the Plaintiffs from both suits collectively as the "Plaintiffs."

[2] Plaintiffs named as Defendants the United States as well as "John and Jane Does," "John Doe Corporations," and "Other John Doe Entities." ECF No. 1. As the United States is the only Defendant that has been served, the Court refers to the United States or the "Government" as the sole current Defendant.

1

pending Motion to Dismiss or, Alternatively, for Summary Judgment. ECF No. 18.[3] The Court held a hearing regarding the Motion on May 17, 2018. ECF No. 26. For the following reasons, the Government's Motion is denied.

## I. BACKGROUND[4]

Plaintiffs allege that on February 1, 2015, shortly after 9:00 PM, Julia Pearce was driving her car northbound on the BW Parkway with Rick Warrick riding in the front seat and his two minor children in the back seat. *Id.* ¶¶ 15–16. Her car got a flat tire, so Pearce pulled over to the right-hand shoulder of the road, parked the car, got out, and held a flashlight while Warrick attempted to fix the tire. *Id.* ¶ 17. Plaintiffs allege that in the "several hundred yards" leading up to where Pearce parked her car, the "curb lane and shoulder were badly deteriorated, rendering the solid white paint line . . . almost entirely invisible." *Id.* ¶ 19. While they were outside the car, Warrick and Pearce were struck from behind by a car driven by Earl Teeter, who drove away from the scene. *Id.* ¶¶ 20, 24. Teeter was later found guilty of Unsafe Operation and Failure to Immediately Stop Vehicle at Scene of Accident Involving Death. *Id.* ¶ 25. Teeter testified at his criminal trial and attributed the crash to the fact that the white road lines disappeared and he was unable to see where the road ended and the shoulder began. *Id.* ¶ 26. The road had rumble strips on the shoulder, which he attempted to use to stay on the road, but without the lines he did not realize he was far enough over the shoulder to hit Pearce and Warrick. *Id.* In response to Teeter's argument that the lack of lane lines caused the crash, Teeter's trial judge, Judge DiGirolamo, reasoned that:

> The fact that there were no lines on the road in my opinion means that Mr. Teeter should have had a more heightened sense of duty of care. You are driving down the road, if there

---
[3] Unless otherwise noted, references to the electronic docket refer to the docket in *Williams et al.*, Civil No. 17-1125.
[4] The facts relied on herein are either undisputed or viewed in the light most favorable to the Plaintiff. Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

> is no lane markings, you have to be extra careful of what is happening around you…[I]t is undisputed that Mr. Warrick and Ms. Pearce were there to be seen. And the driver has a duty to see what is there to be seen.

ECF No. 18-1 at 8.[5]

On April 24, 2017, Plaintiffs filed their Complaint, pursuant to the Federal Tort Claims Act, against the United States of America and John Doe individuals and entities. ECF No. 1.[6] Their Complaint alleges that the Government failed to properly maintain a portion of the BW Parkway running between Maryland Routes 197 and 198, that the Government's negligence caused the death of Rick Warrick and injury to Julia Pearce, and asserts claims of Wrongful Death, *id.* at 7 (Count I), and pain and suffering pursuant to the Maryland Survival Act, Md. Code Ann. Cts. and Jud. Proc. § 6-401, *id.* at 8 (Count II).

On October 16, 2017, the Government filed the now-pending Motion to Dismiss or, Alternatively, for Summary Judgment. ECF No. 18. The Government argues that the Court should dismiss the case or grant judgment in its favor because the United States's decision regarding how to maintain the BW Parkway falls under the "discretionary function exception" of the FTCA and they are therefore immune from suit; and, even if the Government is not immune from suit, the negligence-based claims still fail because the United States did not have a duty to protect the public from criminal acts of a third party and, even if they did have a duty, the lack of white lines was not a proximate cause of the accident. ECF No. 18. The Court held a hearing regarding the Motion on May 17, 2018.

---

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[6] In the *Pearce* case, Plaintiff Pearce filed her Complaint on July 5, 2017. *Pearce v. United States*, Civil No. 17-1816, ECF No. 1.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendant's Motion is styled as a Motion to Dismiss or, Alternatively, for Summary Judgment. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props*., 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that

"might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA confers jurisdiction on the district courts to hear claims "for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant . . . ." 28 U.S.C. § 1346(b)(1). The FTCA thus serves as a waiver of the Government's sovereign immunity. *See Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). A motion to dismiss based on sovereign immunity is a challenge to the Court's subject matter jurisdiction. "[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *In re KBR, Inc., Burn Pit Lit.*, 744 F.3d 326, 333 (4th Cir. 2014) (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995) (noting that "the court may consider the evidence

beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction"). However, "when the jurisdictional facts are inextricably intertwined with those central to the merits, the [district] court should resolve the relevant factual disputes only after appropriate discovery." *In re KBR*, 744 F.3d at 334 (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)).

## III. DISCUSSION

As the Court's only possible jurisdiction over this case is through the FTCA, the Court must first examine whether the Government's conduct falls within the FTCA's discretionary function exception. If the discretionary function exception applies, the Court must dismiss the case pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. If the discretionary function exception does not apply, the Court may assess the merits of Plaintiffs' Complaint pursuant to Rule 12(b)(6). *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

### A. The FTCA's Discretionary Function Exception

The Government argues that it is entitled to dismissal of Plaintiffs' Complaint because the United States's decision regarding when and how to maintain the BW Parkway falls within the FTCA's discretionary function exception. ECF No. 18-1 at 23. As mentioned above, the FTCA waives the sovereign immunity of the United States, 28 U.S.C. § 2674, but this broad waiver of immunity is tempered by a rather extensive list of exceptions found at 28 U.S.C. § 2680. The instant case involves "one of the more important, and certainly one of the most often-contested, exceptions, the discretionary function exception of 28 U.S.C. § 2680(a)." *Baum v. United States*, 986 F.2d 716, 719 (4th Cir. 1993). That exception provides that the FTCA's waiver of federal immunity "shall not apply to—[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion be abused." 28

7

U.S.C. § 2680(a). Assessing whether government conduct falls within this exception requires two steps. First, a court determines "whether the challenged conduct 'involves an element of judgment or choice.'" *Suter v. United States*, 442 F.3d 306, 310 (4th Cir. 2006) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). No discretion exists when "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *Indem. Ins. Co. of N. Am. v. United States,* 569 F.3d 175, 180 (4th Cir. 2009). Second, a court determines whether the decision-making at issue is "susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991).

Here, the Government explains (through a declaration of the Federal Lands Transportation Program Coordinator for the National Park Service's National Capital Region) that "resurfacing and associated restriping of the BW Parkway is a substantial undertaking and is beyond the scope of the routine maintenance performed" by the BW Parkway maintenance crews. ECF No. 18-1 at 25–26. According to the Government, budgeting for resurfacing of the BW Parkway is a complex policy determination, and it was decided that "resurfacing must occur in stages to make smaller, annual draws of funds rather than one complete funding at the project's onset." *Id.* at 26. The Government argues that no statute or regulation dictates how the National Park Service ("NPS") must restripe the lanes on its roadways and that, as a result, the NPS had broad discretion in determining how to maintain the BW Parkway. *Id.* at 27. Thus, the Government argues that the United States's maintenance of the BW Parkway falls within the discretionary function exception. *Id.* at 30 (quoting *Baum v. United States*, 765 F. Supp. 268, 275 (D. Md. 1991), *aff'd*, 986 F.2d 716 (4th Cir. 1993) ("Decisions concerning when and if facilities owned by the Government should be replaced or repaired are inherently discretionary when there are no set guidelines, regulations or standards.").

In opposition, Plaintiffs argue that the United States's maintenance of the BW Parkway does not fall within the discretionary function exception because "an existing regulation prescribed a specific course of action that the U.S. National Park Service had to follow." ECF No. 20 at 14. They point to the Roadway Maintenance Manual, Section 4.6.2, prepared by the Federal Highway Administration for use by NPS, which requires that "[p]avement markings should comply with the [Manual on Uniform Traffic Control Devices or "MUTCD"]. Paint should be re-applied when the existing painted surface shows a loss of visibility and/or retro reflectivity." Section 3B.07 of the MUTCD provides that "[e]dge line markings shall be placed on paved streets or highways." ECF No. 20 at 14–15. They further argue that "the fact that budgetary consideration played a role in the United States' decision not to maintain the lane lines does not bring this decision under the discretionary function exception. Virtually all government activity involves budgetary considerations, but these considerations are not the kind of policy considerations Congress intended to shield from tort liability." *Id.* at 16. Finally, they argue that:

> "[W]here the challenged governmental activity involves safety considerations under an established policy … the rationale for the exception falls away and the United States will be held responsible for the negligence." *ARA Leisure Services*, 831 F.2d at 195. Here, there was an established policy to have clearly marked lane lines in order for drivers to safely travel on the BW Parkway. There is no evidence that there were competing public policy considerations as to whether or not the United States should or should not maintain the lane lines. Therefore, the United States' decision to not maintain the lane lines does not fall under the discretionary function exception.

ECF No. 20 at 15. In reply, the Government argues that the roadway maintenance documents cited by Plaintiffs are guidance documents and "advisory in nature." ECF No. 22 at 10. The Government also points out that "the NPS had indeed elected to maintain the BW Parkway's lane markings" and "was in the process of restriping the BW Parkway when the accident occurred." *Id.* at 12.

In *Quigley v. United States*, the parties raised similar arguments. 927 F. Supp. 2d 213 (D. Md. 2012). There, a water main ruptured, causing water to flow onto a street and flow into a storm drain. *Id.* at 216. There was a breach in the storm drain, which caused water to collect and freeze on the Clara Barton Parkway, which is maintained by the United States. *Id.* The frozen ice caused a car crash, and the passengers of the crashed vehicles sued, among others, the United States. *Id.* The court determined that the National Park Service's "Park Road Standards"[7] "unequivocally require the type of maintenance that Plaintiffs allege did not occur and therefore constitute a mandatory policy for purposes of the first prong of the discretionary function exception." 927 F. Supp. 2d at 223. Specifically, the court reasoned that the Park Road Standards document required that "park roads shall be maintained *to the standards to which they have been constructed or reconstructed,* and in a condition that promotes safety and protects capital investment." *Id.* at 222 (emphasis in original). There, as here, the United States argued that the Park Road Standards "bestow complete discretion on the NPS in managing the parks system and roads." *Id.* at 223. Interpreting the preface of the Park Road Standards, the court concluded that "the discretion that the Park Road Standards provide to the NPS concerns functions such as design, construction, and reconstruction—not the maintenance of roadways. . . . [A]lthough some provisions within the Park Road Standards may provide for flexibility, that flexibility does not apply to the maintenance of the Parkway." *Id.* at 224. Ultimately, the court held that "Plaintiffs have satisfied their burden with respect to the discretionary function exception to the FTCA by showing that 'the governmental action complained of' did not 'involve[ ] an element of judgment or choice' by virtue of the maintenance mandate set forth in the Park Road Standards." *Id.* (quoting *Baum*, 986 F.2d at 720).

---

[7] This document was included as an attachment to Defendants' Motion, ECF No. 18-17.

Here, as in *Quigley*, the Park Road Standards provides a "mandatory policy" that the United States maintain National Park roads "*to the standards to which they have been constructed or reconstructed,* and in a condition that promotes safety and protects capital investment." *Id.* at 222 (emphasis in original). The Government acknowledges that "NPS roadways must incorporate pavement markings 'as part of the design process.'" ECF No. 22 at 3. The Government obviously designed the BW Parkway to have fog lines, and therefore had an obligation to maintain the BW Parkway to that standard "and in a condition that promotes safety and protects capital investment." *Quigley*, 927 F. Supp. 2d at 222. This is especially true as the decision not to maintain the fog lines "involves safety considerations under an established policy rather than the balancing of competing public policy considerations . . . ." *ARA Leisure Services v. United States*, 831 F.2d 193, 195 (9th Cir. 1987). Therefore, "the rationale for the exception falls away and the United States will be held responsible for the negligence of its employees." *Id.*

At oral argument, the Government argued that repainting the fog lines on the BW Parkway was not an ordinary maintenance project, and that it therefore differed from the cases upon which Plaintiffs rely. The Government unsuccessfully raised this same argument in *Quigley*. There, "the Government contend[ed] that the build-up of debris in a drainage ditch cannot be remedied through ordinary maintenance but instead requires comprehensive 'reconstruction' as part of a long-term facilities management project." *Quigley*, 927 F. Supp. 2d at 225. The court concluded there that "such issues are properly the subject of discovery." *Id.* The Court here agrees with the reasoning in *Quigley*. Thus, based on the record before the Court, the discretionary function exception does not apply.

### B. Negligence

Having concluded that the discretionary function exception does not apply, the Court next turns to the merits of Plaintiffs' claims and whether they can survive the Government's Motion. To state a claim for negligence under Maryland law, a plaintiff must allege facts showing "a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Doe v. Bd. of Educ. of Prince George's Cty.,* 982 F. Supp. 2d 641, 659 (D. Md. 2013) (citing *Jacques v. First Nat'l Bank,* 307 Md. 527 (1986)). The Government contends that it did not have a duty to maintain the fog lines on the highway and that if it did have such a duty, any breach of that duty was not the proximate cause of Plaintiffs' damages.

### 1. **Duty to Maintain Lane Lines**

"The existence of all of the elements including a legally recognized duty owed by this defendant to this plaintiff or to a class of persons of which this plaintiff is a member is vital to sustaining a cause of action in negligence." *Valentine v. On Target*, 353 Md. 544, 549 (1999). The question of whether a defendant owed a duty to the plaintiff is a question of law to be determined by the Court. *Rosenblatt v. Exxon*, 335 Md. 58, 76 (1994). Plaintiffs allege that "Defendant had a duty to maintain the Baltimore-Washington Parkway in a condition safe for foreseeable use by motorists such as Plaintiff." ECF No. 1 ¶ 28. Defendant seemingly concedes as much in its Reply Memorandum as the Government argues that there was not a "duty to maintain the BW Parkway's lane striping to any particular quality" but then acknowledges that there was a "duty to maintain the BW Parkway in a reasonably safe condition through the exercise of ordinary care." ECF No. 22 at 4. Even if the duty here is limited to this basic principle, Plaintiffs have sufficiently alleged a duty existed and that the Defendant breached it by

not having visible fog lines. To the extent the Government argues it "discharged its duty . . . via other means, including by the use of rumble strips, to reasonably warn drivers that they have left the roadway," *id.* at 4, the Court cannot find this to be the case as a matter of law at this juncture.

Nonetheless, the Government further argues that, under Maryland law, there is no duty to protect the public from criminal acts of a third person "absent a special relationship . . . or other special circumstances." ECF No. 18-1 at 11. In support of its argument, the Government urges the Court to accept Judge DiGirolamo's finding that Teeter acted criminally even in the absence of fog lines and that, as a result, the United States had no duty to protect Plaintiffs from Teeter's conduct. *Id.* at 12. But even if the Court were to accept that finding,[8] the criminal action was unintentional and the cases discussing the Government's theory do not appear to encompass criminal negligence of the sort involved here.[9] Moreover, what is alleged here is not that the Defendant failed in a non-existent duty to protect the decedent and Pearce from a crime Teeter committed, but rather that there was a duty to maintain safe roads for passengers such as Teeter, Pearce and the decedent and that Defendant's breach of that duty led to Teeter's collision with the decedent and Pearce. Thus, Plaintiffs have sufficiently alleged a duty that was breached by Plaintiff.

### 2. Causation of Plaintiff's Injuries

"It is a basic principle that [n]egligence is not actionable unless it is a proximate cause of the harm alleged." *Doe*, 982 F. Supp. 2d at 661 (internal citations omitted). "Proximate cause exists 'where there is a complete continuance and unbroken sequence between the act complained of and the act finally resulting in the injury, so that the one may be regarded by

---

[8] At oral argument, the Government conceded that Judge DiGirolamo's findings and reasoning are not binding on this Court.
[9] As Plaintiff Pearce notes, each of the cases cited by Defendant involved intentional, violent felonies. ECF No. 21 at 8.

13

persons of ordinary judgment as the logical and probable cause' of the injury." *Vito v. Sargis & Jones, Ltd.*, 108 Md. App. 408, 426 (1996) (quoting *Lashley v. Dawson*, 162 Md. 549, 562 (1932)). "The chain of causation may be broken by an intervening force (negligent or non-negligent) that may, in turn, become a superseding cause, in which case the original tortfeasor's liability will terminate." *Sindler v. Litman,* 166 Md. App. 90, 115 (2005). "An intervening force is a superseding cause if the intervening force was not foreseeable at the time of the primary negligence." *Id*. But the connection between a defendant's negligent act and the harm done is not broken "if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation." *State ex. rel. Schiller v. Hecht Co.*, 165 Md. 415, 421 (1933).

The Government argues that Teeter's actions constituted a "[s]uperseding [i]ntervening [c]ause" of Plaintiffs' injuries, and that Maryland law provides that "unforeseeable criminal acts supersede liability." ECF No. 18-1 at 14–15. However, conduct is not a superseding cause where "the actor at the time of his negligent conduct realized or should have realized that such situation might be created, and that the third person might avail himself of the opportunity to commit such a tort or crime." *Tucker v. KFC Nat'l Mgmt. Co.*, 689 F. Supp. 560, 564 (D. Md. 1988). Nonetheless, the Government argues that it was unforeseeable that Teeter would drive over the rumble strips and "disregard the bright, conspicuous hazard lights flashing from the disabled vehicle" as well as Warrick and Pearce's "flashlights [which] illuminated the shoulder of the road." *Id.* at 17. Plaintiffs argue that "the government at the time of its negligent conduct should have realized that a third person might drift across a fog line faded to the point of invisibility" and that "Teeter's crossing the invisible fog line was a normal consequence of the government's

14

allowing the fog line to fade away to invisibility, and his doing so was not extraordinarily negligent." ECF No. 21 at 11–12; ECF No. 20 at 12.

The extent to which Teeter's driving was done in a "reckless, errant, and criminal manner" is unclear based on the record before the Court. On direct examination at the criminal trial, Teeter testified that he did not cross the rumble strips, and carefully drove to the left of the parked car. ECF No. 18-5 at 121. The Court has reviewed the video that was provided of the car on the night of the accident and notes that there is no visual indication that Teeter struck the parked car, and that the side of the parked car was mere inches away from the rumble strips. ECF No. 18-6. Additionally, Teeter testified that even with the "bad conditions," for a period of time he had no trouble driving because "it was lines on both sides of the lane and my lights illuminated what was in between." ECF No. 18-5 at 121. It was only once the lines disappeared that "it was all uniformly dark" and he was unable to tell where the lane ended. *Id.* Thus, there is a genuine dispute as to whether Teeter simply ignored the rumble strips and flashing lights in a manner that was unforeseeable or whether his driving off the road was the type of foreseeable behavior that the United States should have expected would occur if it allowed the fog lines to disappear.

The Government cites to three cases for the proposition that the actions of a driver striking a pedestrian serve as the superseding cause of the pedestrian's injuries, breaking the chain of causation with other passive forms of negligence. ECF No. 18-1 at 19–23. But in each of these cases, the non-driver related negligence was clearly more passive than that alleged here and, at most, merely placed the victim in harm's way. For example, in *Bloom v. Good Humor Ice Cream Co. of Baltimore*, 179 Md. 384 (1941), a seminal Maryland case on proximate cause cited by the Government, a ten year old boy crossed a street to make a purchase at defendant's parked

ice cream truck and was struck by a car while making the return trip across the street. In determining whether the operator of the ice cream truck was liable based on the alleged negligence of parking the ice cream truck in an area that created danger for the boy, the court first noted that "where the negligence of any one person is merely passive, and potential, while the negligence of another is the moving and effective cause of the injury, the latter is the proximate cause and fixes the liability." *Id*. at 387. Applying that analysis, the court found that the operator of the truck had done nothing to cause the victim to leave the truck and go across the street and that the acts of the victim and the approaching automobile were separate and intervening causes of the accident. *Id*. at 388. Thus, "even if it be assumed that [the operator of the ice cream truck] was negligent in some respect, the connection between the alleged negligent acts of [the operator of the ice cream truck] and the injury, was broken by the intervening, immediate causes, which he had no reason to anticipate, and over which he had no control." *Id*. at 389. Similarly, the court in *Schwarz v. Hathaway* found that the negligence of a pedestrian on the "mini-shoulder" of the road was "at best merely passive and potential" because the truck that struck the pedestrian had veered into the shoulder of the road. 82 Md. App. 87, 96 (1990). And in *Prins v. Schreyer*, the court likewise found any negligence of home owners hosting a party that caused cars to be parked along the road was passive and superseded by a driver failing to obey the speed limit, failing to keep a proper lookout, and driving on the left hand shoulder of the road. 43 Md. App. 500, 507 (1979).

      Here, Plaintiffs have alleged facts and provided evidence that, if viewed in the light most favorable to them, suggests that Teeter was attempting to stay in his lane and was using the fog lines to do so until they suddenly disappeared, causing him to veer off and strike the decedent and Pearce. The purpose of fog lines would appear to be to prevent just this from occurring,

16

which would make it foreseeable that their absence would cause such an event. Thus, unlike *Bloom, Schwarz* and *Prins*, it is not merely alleged that the Defendant put the decedent and Pearce in harm's way where they were struck by a negligent driver; instead, it is alleged that the Defendant's negligence actually caused Teeter to stray from the road and strike them. While the Government contends that Teeter was negligent, and indeed, sitting as a finder of fact, Judge DiGirolamo found him criminally negligent, in this action, there remains a genuine dispute of material fact as to whether that was a superseding, intervening cause, breaking the chain of causation from the Government's alleged negligence.

## IV.     CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss or, Alternatively, for Summary Judgment, ECF No. 18, is denied. A separate Order shall issue.

Date: August  2, 2018                                           /s/                     
                                                            GEORGE J. HAZEL
                                                            United States District Judge